IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DEBORAH SHARPE,
    Plaintiff,

v.

MERRICK GARLAND,
*U.S. Attorney General*, and ANNE MILGRAM,
*Administrator of the Drug Enforcement Administration*,
    Defendants.

Civil No. 1:23cv1219 (DJN)

## MEMORANDUM OPINION
### (Denying in Part and Granting in Part Motion to Dismiss)

This matter comes before the Court on Attorney General Merrick Garland's ("Defendant")[1] motion to dismiss for failure to state a claim. (ECF No. 20 ("Motion").) Deborah Sharpe ("Plaintiff" or "Sharpe"), by counsel, alleges in her complaint that Defendants committed three violations of the Rehabilitation Act of 1978, 29 U.S.C. § 701, *et. seq.* ("the Rehabilitation Act"): (i) failure to provide reasonable accommodation, (ii) discrimination on the basis of disability, and (iii) retaliation for a protected activity. For the following reasons, the Court will DENY IN PART and GRANT IN PART Defendant's Motion (ECF. No. 20).

---

[1] The Department of Justice filed a motion to dismiss only on behalf of Attorney General Garland, but its motion also addresses why the suit should be dismissed as against Anne Milgram. For the reasons discussed below, Anne Milgram is not a proper party to this lawsuit and, accordingly, the Court dismisses her from the suit.

## I. BACKGROUND

In resolving a motion to dismiss, a court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the following facts derive from allegations set forth in the Complaint:

- The Drug Enforcement Agency ("DEA") hired Sharpe in May 2010 as a Freedom of Information Specialist. In 2011, Sharpe accepted a position as a Property Management Specialist ("PMS") in Springfield, Virginia "running the [w]arehouse." (ECF No. 1 ("Compl.") ¶¶ 18–19.) The position involved "the administration and oversight of DEA's property management program" and "handl[ing] property management issues both at headquarters and in the numerous field offices staffed by agency employees worldwide." (*Id.* ¶ 23.) The position "was primarily sedentary in nature." (*Id.*)

- Plaintiff began her position as a PMS in March 2011. (*Id.* ¶ 19.) On March 1, 2011, Plaintiff fell while at work. (ECF No. Compl. ¶ 20.) Due to complications from her accident, Plaintiff developed Reflex Sympathetic Dystrophy ("RSD") of her right foot/ankle; continual moderate sprain of her right foot/ankle; and herniated discs, causing sciatica in both of her legs. (*Id.*) As a result, Plaintiff lacks feeling in her right foot and cannot mobilize her ankle, which requires her to use her left foot while driving, limits the amount of time she can drive and requires her to use a scooter. (*Id.*) Additionally, Plaintiff "suffers from excruciating pain after even short periods of sitting or standing" and walks with the assistance of a cane. (*Id.*)

- On March 3, 2011, Plaintiff reported the severity of her injury to the former Section Chief, Administrative Operations Section at the DEA. (*Id.* ¶¶ 19, 21.)

- On August 17, 2011, the DEA reassigned Plaintiff from the DEA's Springfield, Virginia facility to the Property Management Unit at the DEA's Arlington, Virginia headquarters. Plaintiff alleges that this change increased her commute by an hour and required her to use a car, train and the Metrorail system to get to work. (*Id.* ¶ 22.)

- Between 2011 and 2014, Plaintiff made "numerous requests" to telework or "have a gliding schedule." (*Id.* ¶ 24.) On August 28, 2014, Plaintiff submitted a formal request "seeking full time telework as an accommodation while she recovered from her back surgery." (*Id.* ¶ 29.)

- In response to Plaintiff's formal request for telework, her first-line supervisor, John Cunningham, granted Plaintiff a partial accommodation of four hours of telework per day beginning on October 27, 2014. (*Id.* ¶ 32.) According to Plaintiff, Cunningham informed Plaintiff that he could not grant full-time telework for her position, because he anticipated workflow interruptions and Plaintiff would not be able to obtain Cunningham's "wet signature" on certain documents. (*Id.*) Cunningham informed

2

Plaintiff that the DEA did not, at the time, "have the technology or capability for electronic signature." (*Id.* ¶ 33.)

- Beginning on October 27, 2014, Plaintiff would telework for four hours per day and then use her leave, request advanced leave or take leave without pay ("LWOP") for the remaining 4 hours of the day. (*Id.* ¶ 32.)

- On December 4, 2014, the DEA extended Plaintiff's telework agreement, and. Cunningham reduced Plaintiff's telework hours to three hours per day. (*Id.* ¶ 34.)

- On January 8, 2015, Plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint alleging that the DEA had subjected her to disability discrimination and failed to reasonably accommodate her. (*Id.* ¶ 35.)

- On February 3, 2015, Plaintiff emailed Cunningham a note from Plaintiff's surgeon recommending eight hours of telework because Plaintiff's symptoms prevented her from commuting to the office. (*Id.* ¶ 36.)

- On February 10, 2015, Cunningham reduced Plaintiff's telework accommodations to two hours per day. (*Id.* ¶ 36.)

- On May 8, 2015, Plaintiff filed a formal EEO complaint, which she later amended in October 2015, claiming that Plaintiff had been subjected to a hostile work environment from 2013 through July 2015 because, *inter alia*, her requests for a reasonable accommodation were denied. (*Id.* ¶ 7.)

- On August 29, 2016, Plaintiff filed a second formal complaint of investigation alleging that the DEA discriminated against her and subjected her to a hostile work environment based on her disabilities and denied her a reasonable accommodation. (*Id.* ¶ 8.)

- On January 19, 2018, Ashley America, a Human Resource Specialist, sent a draft notice to Cunningham, which would inform Plaintiff that she could no longer telework for any amount of the workday. (*Id.* ¶ 43.)

- On February 27, 2018, Cunningham sent Plaintiff a memorandum revoking her telework privileges, which explained that he was withdrawing Plaintiff's reasonable accommodation "as it has become an undue hardship allowing [Plaintiff] to perform limited duties[] remotely." (*Id.* ¶ 46.) Cunningham's memorandum explained that "the accommodation was an undue hardship for three reasons: 1) Headquarters (HQ) Prospectus/Office relocation; 2) HQ Technical Refresh of mobile phones; and 3) Conduct hands-on training for Property Custodial Assistants (PCA)." (*Id.* ¶ 46.)

- On March 7, 2018, Cunningham reminded Plaintiff that the DEA expected her to report to work at Headquarters and noted that the DEA would require her to provide updated medical documentation if she wanted to continue using LWOP. (*Id.* ¶ 47.)

- On March 12, 2018, Plaintiff submitted updated medical documentation to Cunningham. (*Id.* ¶ 48.)

- On March 14, 2018, America advised Cunningham that Plaintiff needed "to turn in updated medical documentation, not just the same notes [Plaintiff] ha[d] been turning in." America advised Cunningham that it would be appropriate to charge Plaintiff absent without leave ("AWOL") until Plaintiff submitted "acceptable medical documentation." (*Id.* ¶ 49.)

- On March 15, 2018, Plaintiff submitted another letter from her treating provider explaining her current diagnosis and treatment plan. Later that day, Cunningham sent another request for medical documentation to Plaintiff. (*Id.* ¶ 50.)

- On March 23, 2018, Cunningham informed Plaintiff that her medical documentation was adequate and, accordingly, she would not be "charged AWOL." No one at the DEA informed Plaintiff of any deficiencies in her medical documentation. (*Id.* ¶ 51.)

- On May 3, 2018, Mr. Cunningham notified Plaintiff that he could no longer approve Plaintiff's LWOP and that her "[f]ailure to report to [her] duty station" would result in charges of AWOL. (*Id.* ¶ 53.)

- At all times before the DEA's decision to remove Plaintiff, the DEA rated her performance "Successful." (*Id.* ¶ 57.)

- On July 10, 2018, Plaintiff received a notice of proposed removal from the then-DEA Deputy Administrator charging her with three specifications of Recurring Excessive Unexcused or Unauthorized Absences, identifying that Plaintiff had failed to report to work for the entire month of May 2018 and for the first week of June 2018. (*Id.* ¶ 56.) Plaintiff was subsequently removed on October 15, 2018. (*Id.* ¶ 58.)

Plaintiff now brings the instant suit alleging that the DEA failed to accommodate her disability by not allowing her to telework and by failing to provide her with "alternate, effective accommodations." (*Id.* ¶¶ 64–66.) Additionally, Plaintiff claims that the DEA discriminated against her because of her disability by repeatedly requesting medical documentation and that the DEA retaliated against her by reducing her telework hours. (*Id.* ¶¶ 70–80.) Plaintiff brings each of these claims under Section 504 of the Rehabilitation Act.

4

## II.    STANDARD OF REVIEW

Defendant has moved under Rule 12(b)(6), Fed. R. Civ. P., to dismiss Plaintiff's complaint.  The legal standard governing a motion to dismiss has been well-settled and does not require extensive discussion.  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim meets the threshold of facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  For purposes of resolving a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and all facts are viewed in the light most favorable to plaintiff.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  In the employment discrimination context, this means that a plaintiff may not rely on speculative assertions, but rather must plead facts that qualify as sufficient to support her conclusion of discrimination or retaliation.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617–18 (4th Cir. 2020).

Here, Plaintiff brings all claims under Section 504 of the Rehabilitation Act, which provides, in relevant portion, that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any . . . program or activity conducted by any Executive agency."  29 U.S.C. § 794(a).  Courts evaluate employment discrimination claims brought under Section 504 using the same standards as those "applied under [T]itle I of the

Americans with Disabilities Act of 1990." 29 U.S.C. § 794(d); *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 413 (4th Cir. 2015).

### III. ANALYSIS

#### A. Failure-to-Accommodate Claim

Plaintiff alleges that the DEA failed to accommodate her disability by not allowing her to telework and by failing to provide her with "alternate, effective accommodations." (Compl. ¶¶ 64–66.) Instead, the DEA mandated that she take sick leave or LWOP "when she was willing and able to perform the essential functions of her job" through telework. (*Id.* ¶ 67.) As a result, Plaintiff claims, the DEA violated Section 504 of the Rehabilitation Act. Plaintiff has alleged sufficient facts to support the elements of a failure-to-accommodate claim, and the Court therefore denies Defendant's motion to dismiss this claim.

To assert a viable *prima facie* failure-to-accommodate claim, Plaintiff must allege that "(1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019). An employer need not "provide the exact accommodation that an employee requests." *Id.* at 338. Even if Plaintiff establishes a *prima facie* case, Defendants can avoid liability if they can show that the proposed accommodation "will cause 'undue hardship in the particular circumstances.'" *Reyazuddin*, 789 F.3d at 414. As the Fourth Circuit has made clear, "while a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Ct. of*

6

*Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Defendant argues that Plaintiff has failed to plausibly allege sufficient facts to support the first and third necessary elements of a failure-to-accommodate claim — namely that Plaintiff otherwise possessed the necessary qualifications and could perform the essential functions of the position with a reasonable accommodation. A qualified individual must demonstrate that she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position" at issue. *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) (quoting 42 U.S.C. § 12111(8)). Plaintiff bears the ultimate burden of proving that she can perform the essential functions, and if not, that a "reasonable accommodation by the employer would enable [her] to perform those functions." *Tyndall*, 31 F.3d at 213.

Plaintiff has adequately alleged sufficient facts to infer, construing everything in the light most favorable to Plaintiff, that she could have performed the essential functions of her position with the reasonable accommodation of telework. Her job as a PMS involved "developing, recommending, and reviewing the effectiveness of DEA policies, procedures, and standards covering the authorization, acquisition, storage, distribution, use, maintenance, disposal, and accountability of DEA furniture and equipment." (Compl. ¶ 23.) She indicates that her duties were computer-based and sedentary, rather than hands-on. (*Id.* ¶ 64.) The DEA tasked Plaintiff with managing property worldwide, so it appears plausible that her presence in the Arlington, Virginia office location would not have allowed her to engage more meaningfully with the property at issue than if she were teleworking. (*Id.* ¶ 23.) While the DEA also tasked Plaintiff with managing property at headquarters, the fact that the DEA could make her responsible for

managing property worldwide suggests that proximity to the property itself may not have been crucial to complete the relevant tasks. Indeed, throughout the entire period of Plaintiff's employment, during which it seems that she came into the office little if at all, the DEA rated her performance "Successful." (*Id.* ¶ 57.)

Additionally, based on the information alleged, it seems implausible to conclude that Plaintiff's requested accommodation would have imposed an undue burden on the DEA. According to Plaintiff, the only reasons that the DEA initially required Plaintiff to come in-person to work were the need for Plaintiff to obtain her supervisor's "wet signatures" and the possibility of anticipated slow workflow. (*Id.* ¶ 33.) The latter basis is too vague to conclude that Plaintiff's requested accommodation imposed an undue burden on the DEA. And Plaintiff and her employer could likely have navigated the former without requiring anything too onerous of the DEA. Later, upon revoking Plaintiff's accommodation, Cunningham indicated that telework constituted an undue hardship on the DEA for the following additional reasons: "1) Headquarters (HQ) Prospectus/Office relocation; 2) HQ Technical Refresh of mobile phones; and 3) Conduct hands-on training for Property Custodial Assistants (PCA)." (*Id.* ¶ 46.) The list that Cunningham provided Plaintiff does not support a conclusion that the accommodation imposed an undue burden on the DEA. Cunningham's list does not make clear, for example, why the training for the PCAs implicated Plaintiff, who the DEA employed as a PMS, or why the HQ relocation necessitated Plaintiff's presence. Nor does it provide any reason that the DEA could not easily conduct a technical refresh of mobile phones remotely.

In sum, Plaintiff has alleged facts sufficient to infer that she was a qualified individual for the position and, at this stage, it does not seem that the accommodation would have posed an

undue burden on her employer. Accordingly, the Court denies Defendant's Motion with respect to Plaintiff's failure-to-accommodate claim.

B. **Discrimination on the Basis of Disability**

Plaintiff also brings a claim for discrimination on the basis of disability under the Rehabilitation Act. To establish a claim for disability discrimination, Plaintiff must ultimately show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Off. Of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)). No one disputes that Plaintiff has a disability. As discussed in the preceding section, Plaintiff has plausibly alleged that she is a "qualified individual" for the job in question. Plaintiff has not, however, plausibly alleged facts that are sufficient to support an inference that the DEA took adverse employment action because of Plaintiff's disability.

Plaintiff alleges that Defendants discriminated against her when they required her to provide updated medical information "on multiple occasions in March 2018" when Plaintiff's need for reasonable accommodation was already known and obvious and she had continually provided Defendants with current medical information. Plaintiff alleges that her supervisor informed her on March 7, 2018 that, to continue using LWOP, she would need to provide "updated medical documentation." (Compl. ¶ 47.) In addition, on March 14, 2018, a DEA human resource specialist contacted Plaintiff to inform her that a notice requesting additional medical documentation was "ready" and that Plaintiff needed to "turn in updated medical documentation, not just the same notes she [had] been turning in." (*Id.* ¶ 49.) Later that day, the same human resource specialist sent Plaintiff a letter signed by the section chief of the human

9

resources division reminding Plaintiff that her supervisor had informed her of the need to submit updated medical information to continue using LWOP. (*Id.*) On March 15, 2018, Plaintiff's supervisor sent her another request for medical documentation. (*Id.* ¶ 50.) Plaintiff alleges that she submitted updated medical documentation following each request except for her supervisor's March 15, 2023 request and that her employer's repeated requests for medical information constitute discrimination. (*Id.* ¶¶ 47–51, 70–73.)

Absent extreme circumstances, it does not constitute discrimination for an employer to request medical documentation to substantiate an employee's claims of disability or illness. Indeed, courts have declined to consider requests for medical documentation as "adverse employment actions" for the purposes of establishing discrimination. *See, e.g., Osby v. City of New York*, 748 F. App'x 375, 378 (2d Cir. 2018) ("[T]he requirements that [Plaintiff] submit medical documentation and timesheets . . . are not sufficiently adverse to support either a discrimination or a retaliation claim."); *Frazier v. Donahue*, 2016 WL 1045853, at *7 n.4 (D. Md. Mar. 15, 2016) ("[T]here is nothing inappropriate about an employer requesting medical documentation for a disability."); *Ramsey v. Moniz*, 75 F. Supp. 3d 29, 50 (D.D.C. 2014) ("Generally, requests for medical information do not rise to the level of an adverse employment action.").

At the time, Plaintiff was taking six hours of leave per day, and it appears reasonable for her employer to require documentation before approving such significant amounts of leave. Both Plaintiff's supervisor and a human resource specialist were working to address Plaintiff's telework and leave requests, so it seems hardly surprising that Plaintiff would have received requests for medical documentation from separate sources. While the DEA might have solicited the documentation in a more administratively streamlined way, the requests for documentation

did not rise to the level of harassment or badgering. Because Plaintiff has not alleged facts sufficient to support an inference that she experienced an adverse employment action because of her disability, Plaintiff's claim for discrimination must be dismissed.

### C.   Retaliation

Finally, Plaintiff claims that Defendants retaliated against her for protected activities. Plaintiff claims that she engaged in protected activities by requesting reasonable accommodations, objecting to the DEA's requests for additional medical documentation and filing and participating in the processing of EEO complaints, and that Defendants then retaliated against her by cutting her daily telework hours from four to three to two and, finally, to zero. (Compl. ¶¶ 74–80.)

To state a *prima facie* claim of retaliation under the Rehabilitation Act, Plaintiff must allege that (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) there was a causal connection between the protected activity and the adverse action. *Barreto v. SGT, Incf.*, 826 F. App'x 267, 271 (4th Cir. 2020); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001). With respect to the third element of a retaliation claim, in the absence of "facts that suggest that the adverse action occurred because of the protected activity," Plaintiff must show "the adverse act bears sufficient temporal proximity to the protected activity." *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021).

Plaintiff first engaged in protected activity when she made multiple accommodation requests between 2011 and 2014. (Compl. ¶ 24.) The last such request occurred on August 28, 2014. (Compl. ¶ 29.) Plaintiff filed an EEO complaint in 2015, a second EEO complaint in August 2016, and a third EEO complaint in March 2018. (Compl. ¶¶ 7–9.) Plaintiff alleges no facts suggesting that any adverse actions occurred because of her protected activity, so she can

11

only rely on the temporal proximity of the events to support an inference of causation. Yet, the alleged adverse actions — reducing the number of her allowed telework hours, disallowing telework altogether and ultimately removing her — all occurred months after each purported instance of protected activity.[2] For instance, the first telework reduction allegedly occurred in December 2014 — more than three months after Plaintiff's August 28, 2014 accommodation request and before her first EEO complaint. And it was not until January 2018 — a year-and-a-half after Plaintiff's second EEO complaint — that the DEA informed Plaintiff that she could no longer telework. These temporal gaps alone, accompanied by no other inference of a causal connection between any protected activity and adverse action, are insufficient to plausibly suggest causation. *See, e.g., Laurent-Workman v. Wormuth*, 54 F. 4th 201, 219 (4th Cir. 2022) (indicating that a two-month temporal gap between protected activity and adverse action is sufficiently long such as to "weaken significantly the inference of causation").

Attempting to show causation, Plaintiff points to the informal EEO Complaint that she filed on January 8, 2015. (Compl. ¶ 35; ECF No. 23 ("Pl.'s Resp. Mot.") at 13.) After Plaintiff filed the informal Complaint, Cunningham reduced Plaintiff's telework reasonable accommodation to a limit of two hours per day a little over a month later on February 10, 2015. (Compl. ¶ 36.) Additionally, Plaintiff highlights the fact that the DEA revoked her reasonable accommodation during the time that the EEOC complaint was being litigated. (*Id.* ¶ 46.) Neither of these can rescue Plaintiff's claim.

---

[2] While not raised in Plaintiff's briefing, her Complaint lists her objections to the DEA's requests for medical documentation among her purportedly protected activities. (Compl. ¶ 75). Plaintiff's opposition to her employer's reasonable requests for medical records do not constitute a protected activity and, thus, cannot form the basis for her retaliation claim. *See, e.g., Thomas v. Corwin*, 483 F.3d 516, 531 (8th Cir. 2007) (finding that Plaintiff "did not engage in statutorily protected conduct by opposing" her employer's "legitimate, focused request for [Plaintiff's] medical records.").

Cunningham's reduction of Plaintiff's telework on February 10, 2015 constituted part of the gradual reduction of Plaintiff's telework hours that began before she filed the informal EEO complaint and continued well afterwards. Given that Plaintiff relies only on temporal proximity to show causation, this reduction — which aligned with and carried out the DEA's consistent and previously announced inclination to limit her telework hours — fails to create an inference of retaliatory animus. *See, e.g., Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.")

Nor does the DEA's revocation of Plaintiff's reasonable accommodation during the time that she was litigating her EEOC complaint support an inference of retaliation. As with the February 10, 2015 reduction of Plaintiff's telework hours, this ultimate reduction of teleworking hours to zero aligned with the DEA's consistent and previously announced intentions. Moreover, the DEA revoked Plaintiff's accommodation on February 27, 2018 — two-and-half years after Plaintiff filed her EEO complaint. It cannot be the case that each and every adverse action taken by an employer during the time of a pending EEO complaint gives rise to an inference of retaliation. Rather, for purposes of establishing temporal proximity, the Fourth Circuit looks to when the employer knew of the filing of the EEO complaint. *See, e.g., Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021) ("The measurement of time to determine temporal proximity starts . . . when the decisionmaker at question learned of the protected activity.") (internal quotations omitted). Here, absent any allegation that the DEA was unaware of her EEO complaint until shortly before it revoked her telework status, the timeline

fails to support an inference of a causal connection between the protected activity and the adverse action.

As Plaintiff has failed to plausibly allege any causal connection between her protected activities and the adverse actions that her employer took against her, Plaintiff's claim for retaliation must be dismissed.

### D.    Proper Defendants

Plaintiff improperly named both the U.S. Attorney General and DEA Administrator Anne Milgram as defendants. Additionally, the introductory paragraph of Plaintiff's Complaint also mentions "Charlotte A. Burrows," presumably referring to the head of the Equal Employment Opportunity Commission. (Compl. at 1.) Only the Attorney General constitutes a proper defendant in this suit.

Claims under the Rehabilitation Act "must comply with the same administrative procedures that govern federal employee Title VII claims." *Stewart v. Iancu*, 912 F.3d 693, 698 (4th Cir. 2019). Title VII provides that with respect to claims of employment discrimination or retaliation arising out of federal employment, there can be only one proper party defendant: "the head of the department, agency, or unit." 42 U.S.C. § 2000e-16(c). Accordingly, Plaintiff — as a former employee of a sub-component of the Department of Justice — can name only the Attorney General, the head of the department, as a party defendant to the instant civil action. 28 C.F.R. §§ 0.1, 0.5. The Court therefore dismisses Anne Milgram and, to the extent that Plaintiff named her as a defendant, Charlotte Burrows from this action.

14

## VII. CONCLUSION

For the reasons stated, the Court grants Defendant's Motion insofar as Defendant seeks dismissal of Plaintiff's claims of discrimination on the basis of disability and retaliation for protected activity, as well as the dismissal of defendants Anne Milgram and Charlotte Burrows from the suit. However, Defendant's Motion cannot succeed insofar as Defendant seeks dismissal of Plaintiff's claim of failure-to-accommodate. Accordingly, the Court will DENY IN PART and GRANT IN PART Defendant's Motion (ECF. No. 20).

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

\_\_\_\_/s/_____
David J. Novak
United States Magistrate Judge

Alexandria, Virginia
Date: January 29, 2024